IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

**February 10, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| DEAN EDWARD KNOLL, | ) | ANDERSON CHANCERY |
| | ) | C.A. NO. 03A01-9707-CH-00275 |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | HON. WILLIAM E. LANTRIP |
| | ) | CHANCELLOR |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| LEYSA ELAINE RADER KNOLL, | ) | AFFIRMED AND REMANDED |
| | ) | |
| Defendant-Appellee | ) | |

VICTORIA H. BOWLING, Knoxville, ELBERT COOPER, Clinton, for Appellant.

DAIL R. CANTRELL, Cantrell, Pratt & Varsalona, Clinton, for Appellee.

O P I N I O N

McMurray, J.

In this divorce case, plaintiff, Dean Edward Knoll, (Father) appeals the trial court's custody award of his three year old daughter, Brittany, to Leysa Elaine Rader Knoll (Mother). The trial court awarded the father the divorce and the mother custody, granting the father visitation of every other weekend, alternate major holidays, and two weeks during the summer. We affirm the judgment of the trial court.

The father appeals, presenting the following issues, taken verbatim from his brief:

1. Whether the trial court abused its discretion in finding that the mother was comparably more fit to have custody of the minor child than the father.

2. Whether the trial court abused its discretion in not allowing the mother's ex-husband, Shawn Grady, to testify to material and relevant evidence regarding the issue of the mother's ability to properly care for the minor child.

3. Whether the trial court abused its discretion in refusing to review and consider the video tape offered into evidence by the father, which would have further substantiated that the mother disobeyed a direct order from the trial court in allowing her boyfriend to stay overnight at her residence and which should have been included in the trial court's comparative fitness analysis.

2

In addition, the mother insists that this is a frivolous appeal.

In November of 1994, the parties, who were then married, decided to move from Clinton to Indiana because the father had accepted a job with the University of Purdue. The plan was for the father to find a place to live and set up a household in Indiana, and then the mother, along with their daughter Brittany and the mother's two sons from a prior marriage, would join him. In January 1995, after the father had moved and started his new job, the mother informed him that she was not moving from Clinton.

The father filed a complaint for divorce on March 25, 1995. He filed a request for temporary custody of Brittany, which was granted by the trial court on April 25, 1995. The mother was granted "reasonable visitation with the child." For approximately seven months thereafter, Brittany stayed with the father's parents in LaFollette, Tennessee. The father stated that he did not move Brittany to Indiana because he wanted the mother to have reasonable access to her daughter.

On November 2, 1995, the mother filed a motion for custody of Brittany pending trial. The trial court, after a hearing on November 27, 1995, found that the mother "has been the primary

3

caretaker of this child since its birth."  The court granted her custody, pending the divorce trial, with reasonable visitation to the father.

The divorce trial was conducted on April 1, 1996. As previously noted, the trial court awarded the father the divorce based on inappropriate marital conduct by the mother.  The mother was awarded custody of Brittany, and the father was granted reasonable visitation.

Turning to the father's first issue, we find that there is no abuse of discretion by the trial.  It is a well-settled principle that the trial court has wide discretion in matters of custody and visitation, and its decision will not ordinarily be overturned absent some abuse of that discretion.  Jahn v. Jahn, 932 S.W.2d 939, 941-2 (Tenn. App. 1996).

The vast majority of the testimony at trial revolved around the father's allegations regarding the mother's alleged extramarital affairs, before and after the parties were separated by the mother's decision to remain in Tennessee.  The mother denied having any sexual affairs during the parties' marriage. The father put on several witnesses, including an acquaintance of the mother and two private investigators, whom he had hired, in an attempt to show that she did engage in such conduct.  The tran-

4

script clearly reveals that this issue turned squarely on determinations of credibility of the various witnesses. "Where the issue for decision depends upon the determination of credibility of witnesses, the trial court is the best judge of credibility, and its findings will be given great weight." Gotwald v. Gotwald, 768 S.W.2d 689,697 (Tenn. App. 1988). "On an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." Tennessee Valley Kaolin v. Perry, 526 S.W.2d 488, 490 (Tenn. App. 1974). We defer to the trial court's determination of credibility and find that the evidence clearly does not preponderate against the trial court's judgment.

While the parties chose to focus primarily on the issue of the mother's marital fidelity or lack thereof, the trial court correctly based its decision on a "comparative fitness" analysis, focusing centrally upon the issue of which custody arrangement would be in the best interest of the minor child. See Bah v. Bah, 668 S.W.2d 663 (Tenn. App. 1983). At trial, there was no testimony that the mother was an unfit parent, or that she had neglected or otherwise inappropriately cared for Brittany. The chancellor enumerated several factors which militated in favor of the mother having custody, i.e., that the mother had been the primary caregiver for Brittany since birth, that Brittany was

5

accustomed to living with her two half-brothers as a family, and that awarding the father custody would have entailed relocating her a substantial distance from all of her relatives, including the paternal grandparents.

The father presented the testimony of Shawn Grady, the mother's former husband and the father of Brittany's two half-brothers. Grady testified about their son's asthma condition and his serious allergies. During the mother's marriage to Grady, their son's allergies were treated by a series of weekly allergy shots. Grady testified that over the course of approximately three years, the mother had missed the administration of three allergy shots. The entirety of his testimony in this regard was presented in an offer of proof, but apparently the chancellor did not consider it as substantive evidence, sustaining the mother's relevance objection. Even if the evidence were relevant the failure to admit or consider it would be harmless error.

Finally, the father complains that the chancellor did not watch or consider a surveillance videotape offered into evidence by the father. The tape was made by two private investigators hired by the father in an attempt to show that the mother's "boyfriend" spent the night at her apartment.[1] The investigators

---

[1]The mother denied having such a romantic relationship.

testified as to what they observed during their surveillance, and what was presented in the videotape. It thus appears that the chancellor was made aware of the sum and substance of the video-tape through the investigators' testimony.[2]

The mother testified that the alleged boyfriend never spent the night at her apartment, and that the description of the man entering her apartment the evening of the investigators' surveillance matched that of her brother, who did spend the night on occasion. Thus, this question was properly resolved as a matter of credibility. In any event, the chancellor's failure to review the tape because it was cumulative of the investigators' testimony was not an abuse of his discretion under the circumstances. Even if it had been shown that the mother had on occasion allowed a boyfriend to spend the night, this would have been but one of myriad factors for the court to consider in determining the best interests of the minor child, and certainly not conclusive of that determination. See Sutherland v. Sutherland, 831 S.W.2d 283, 286 (Tenn. App. 1991); Varley v. Varley, 934 S.W.2d 659, 666-7 (Tenn. App. 1996).

We find no error in the trial court's judgment that the interest of the minor child would best be served by awarding

_____

[2]We have viewed the video tape and it adds nothing to the other evidence presented in the case. The quality of the tape is to render it virtually useless as evidence.

7

custody to the mother.  Further, we find that this appeal is not frivolous.

We affirm the trial court's judgment in all respects. The case is remanded to the trial court for such further action as may be necessary.  Costs on appeal are assessed to the appellant.

_____
Don T. McMurray, Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Herschel P. Franks, Judge

8

IN THE COURT OF APPEALS
AT KNOXVILLE

DEAN EDWARD KNOLL,            )      ANDERSON CHANCERY
                             )      C.A. NO. 03A01-9707-CH-00275
        Plaintiff-Appellant )
                             )
                             )
                             )
                             )
                             )
vs.                          )      HON. WILLIAM E. LANTRIP
                             )      CHANCELLOR
                             )
                             )
                             )
                             )
                             )
LEYSA ELAINE RADER KNOLL,    )      AFFIRMED AND REMANDED
                             )
        Defendant-Appellee   )


**<u>JUDGMENT</u>**

This appeal came on to be heard upon the record from the Chancery Court of Anderson County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the trial court's judgment in all respects. The case is remanded to the trial court for such further action as may be necessary. Costs on appeal are assessed to the appellant.


PER CURIAM